## JUANA TAFOYA *v.* MANUEL GARCIA ET AL.

PREVIOUS ACTS NOT CONTAINED IN REVISED STATUTES, REPEALED.—All laws enacted prior to the session of the territorial legislature of 1864–65 which are not contained in the revised statutes adopted at that session, were impliedly repealed by such omission. Hence, the act of January 26, 1860, relating to trials of the right of property, is not now in force. *Contra*, Waters, J., dissenting.

APPEAL from the district court for Bernalillo county. The case is stated in the opinions of the judges.

*R. H. Tompkins*, for the appellant.

*Joab Houghton*, for the appellees.

By Court, JOHNSON, J. :

At the October term, 1868, of the district court for Bernalillo county, judgment was given in an action in favor of Henry Springer against Jose Antonio Tafoya and Cresencio Jaramillo, and afterward upon that judgment execution was issued, by virtue of which Manuel Garcia, then sheriff of that county, levied upon certain property as property of Jose Antonio Tafoya, one of the defendants to said judgment. On the nineteenth of March, 1869, Juana Tafoya commenced proceedings under an act of the legislature of the session of 1859–60, to claim as hers the property referred to. Subsequently, at a special term of the district

court for said county, held in July, 1869, the claimant, Juana Tafoya, by her counsel, moved the court to direct an issue to be made between the parties as to the right to said property, which motion was overruled and the claimant's suit dismissed.    And from this judgment the claimant appeals to this court.

The question to be determined here is, whether the legislature, by the act of January 24, 1865, entitled "An act relative to the revision of the statutes," intended that the revised statutes by that act adopted should render nugatory and void all statutes of a public nature enacted anterior to the passage of said act, and not contained in that revision or passed during the session of the legislature of 1864–65. The solution of this question of intention is to be derived, not alone from the context of the act referred to, of January 24, 1865, but from the acts of January 3, and February 2, 1859, relative to the revision of the statutes (published with that revision), and the circumstances requiring the revision.

The act of January 3, 1859, required the governor to appoint a commission "to collect, revise, and put into systematic order the laws" then "in force in this territory," and to do other things in the premises specified in the act.    The act of February 2, of the same year, is amendatory of this act, and required the commission referred to to recommend such changes and amendments of existing laws as the commission might "deem necessary and proper to give effect to said laws;" and says, further, "that said commission, on making their report to the legislature of the revision of the laws proposed by them, shall report at the same time the changes and amendments for adoption or rejection by the legislative assembly."    That the commission did as required of them by the foregoing acts in revising the statutes, and reported to the legislature the changes and amendments for adoption or rejection, is to be inferred from the preamble to the act of January 24, 1865: "Whereas, the commission of revisers appointed by the governor have reported to this assembly, through the joint committee of both houses, a revision of the statutes of this territory," etc.    Then after this predication, the preamble says, "therefore," and the

act proceeds with the style "be it enacted," etc. (appendix to
Rev. Stats. and Laws, 742–744, section 1), "that the revision
of the statutes, commencing with article 1, entitled 'Ace-
quias,' and ending with article 67, entitled 'Woods and
Prairies,' with all and each of the articles and chapters in-
clusive, be, and the same are hereby declared to be the re-
vised statutes and laws of the territory of New Mexico, and
as such shall have full force and effect· in all courts
thereof."

Thus the legislature, six years after the enactment of the
statutes authorizing the revision of our statute laws, received
the report of the commission in the premises, and by adopt-
ing the revision of the commissioners made their work its
own; and declared, with all the necessary formality and
solemnity, that this "revision of the statutes," described in
language so certain as to place their identity beyond ques-
tion, "shall be the revised statutes and laws, and as such
shall have full force and effect in all courts." By the term
revised statutes is to be understood not merely the compila-
tion or collecting together of existing statutes, but also the
amendment or expurgation of such provisions as the revis-
ers might deem unnecessary. The commissioners may have
thought proper, in performing the duties required of them,
to amend the statutes by omitting (and they were undoubt-
edly authorized by law to do so) entire statutes in force or
parts of statutes prior to the session of the legislature at
which these revised statutes were adopted, and when such
acts are not found included among those which the act of
January 24, 1865, declares "shall have full force and effect
in all courts," as the Revised Statutes and Laws of the Terri-
tory of New Mexico. The presumption is warrantable that
it was the intention that they should thereafter have "no
force and effect." Such intention of the legislature is the
more forcibly to be inferred from the use of the word "full"
before the words "force and effect." As though not satis-
fied that the words "force and effect" would sufficiently
express its intention, the legislature qualified them with
the word "full," meaning complete, no room for anything
else, exclusive.

Such intention is further to be inferred from the saying, in the fourth section of the act, as to laws passed during the session of 1864–65, "that all laws of a general nature which shall be passed and approved during the present session of this assembly shall be included in the said revision as an appendix, and shall have force and effect as a part of the said revised laws and statutes."

"Where the intent of the statute is plain, nothing is left to construction; where the intention is to be ascertained, everything from which aid can be derived is to be regarded, and the title of an act claims a degree of notice, and will have its due share of consideration:" *United States* v. *Fisher et al.*, 2 Cranch, 358, 386.

"The spirit, as well as the letter of the statute, must be respected; and where the whole context of a law demonstrates a particular intent in the legislature to effect a certain object, some degree of implication may be called in to aid that intent:" *Durousseau* v. *The United States*, 6 Cranch, 307, 314.

"In the construction of the statutory or local laws of a state, it is frequently necessary to recur to the history and situation of the country, to ascertain the reason, as well as meaning, of their provisions, to enable a court to apply the different rules for construing statutes:" *Preston* v. *Browder*, 1 Wheat. 115, 121.

It is a fact well known, not only to the bench, bar, and magistracy, but to the people of this territory, that at the time of the passage of the act adopting the Revised Statutes, many of the pamphlet laws of previous sessions of the legislature were, and had been for several years, out of print, and out of the possession of most of the officers whose duty it is to execute the laws. A fact so notorious could not but have been within the knowledge of the legislature of 1858–59, which authorized the revision, as well as that of 1864–65, which adopted the revision, and declared it to be "the revised statutes and laws of the territory of New Mexico," and required them, "as such," to "have full force and effect in all courts thereof." Hence, the inference is irresistible, that it was the intention of the act of January 24,

1865, to place before the people in the "revised statutes and laws," all the acts of a public nature, of previous sessions, which the legislature deemed proper to be continued in force. This inference is strongly supported by the fact that the territory had no funds, from the national treasury or any other source, available for reprinting the statutes of sessions previous to that of 1864–65, otherwise than by a revision or compilation.

Now, in this view of the case, it seems that the decision of the court below should be affirmed. A reversal would have the effect of requiring judges, magistrates, other officers, and the masses of the people to act under statutes of the requirements of which they could inform themselves only by procuring, at vast individual expense, from the secretary of the territory, manuscript copies of most, if not all, of the acts of the legislature anterior to the session of 1864–65; and by careful study of such voluminous masses, ascertain what provisions of law have been repealed, and what remain in force; each judge, magistrate, officer, and individual becoming, as it were, a reviser of the laws.

Under such conditions, litigation would be costly and interminable; each stage of a cause, whether in a court of record or not of record, would be attended with difficulty of ruling and decision, and there would result doubt and obscurity as to the law, where the security of society and its individual members requires clearness and certainty. Suppose, for instance, in the discussion of a question arising in the trial of a cause, it be asserted on either side, that there is an unrepealed statutory provision of the Kearny code, or some act existing previous to the adoption of our present Revised Statutes, and omitted from them, applicable to the question. The court or magistrate before whom the cause is trying, if a copy of a pamphlet containing such omitted provisions be presented, is unable to determine whether such provisions may not have been repealed by some other statute, or section or clause of a statute likewise omitted from the Revised Statutes, and not available for reference; a decision sustaining or overruling would make ground of appeal, and ultimately resort to this court might

be made in almost every cause, to ascertain, not what is law, but what is not law.

The affirmation of the judgment of the court below would not leave the appellant or other parties without legal remedy in this or similar cases, nor affect statutes of a private nature, or vested rights under any law of this territory, while a reversal would work great mischief.

WATERS, J., dissenting:

I am compelled to dissent from the opinion of the majority of the court, for the following reasons: This is an action at law, brought by the plaintiff against the defendant for the recovery of certain personal property, under an act of the territorial legislature entitled, " An act providing for the trial of the right of property in certain causes and for other purposes; approved January 26, 1860." The court below refused to have issue joined for the trial of the rights of the property claimed, and dismissed the case, whereupon the plaintiff appeals to this court. The court below took the position that the law above referred to was repealed by the adoption of the Revised Statutes.

The only question that presents itself, and which should be considered in this cause, is, whether an act entitled " An act relative to the revision of the statutes," approved January 24, 1865 (and which will be found on page 274 of the Revised Statutes), repealed the act first referred to. In order to arrive at a clear understanding of this question it is necessary to get as near as we can the intention of the legislature, not only at the time the revision was authorized, but also at the time the revision was adopted. The great object in the construction of all statutes is to ascertain the intention of the enacting power, and the rules to be observed for this purpose are simple and too well known to need repetition. "This intention having been ascertained, the court which refuses to carry it into effect must be regardless of its duty. It is our duty to declare, not to make the law." To do this correctly the ordinary rules of construction must be adopted, and the meaning of words,

sentences, and phrases, must not be distorted to sustain an opinion.

In January, 1854, the legislature passed a law, making it the duty of the governor "to appoint a commission of two or more competent persons to collect, revise, and put in systematic order, the laws then in force in this territory, and it was made the duty of said commission so appointed to revise carefully the code and the statutes, etc., and to present and return to the next or some other legislature, and to his excellency the governor, a list of all the laws in force, and also of all those repealed," etc. What the intention of the legislature creating this revising commission was, is clearly expressed in the language just quoted. It was undoubtedly their intention to have a complete and systematic revision of all the laws then in force contained in one volume. This, indeed, is the great object of all revisions.

Six years after the passage of the act creating the commission, a report appears to have been made by said commissioners to the legislature then in session, which was in the year 1865. The legislature, by an act of that session, and heretofore referred to, enacted, "that the revision of the statutes, commencing with article 1, entitled '*Acequias*,' and ending with article 67, entitled 'Woods and Prairies,' with all and each of the articles and chapters inclusive, be, and the same are hereby declared to be the revised statutes and laws of the territory of New Mexico, and as such shall have full force and effect in all courts thereof."

Having ascertained the intention, as I think, of the legislature authorizing the revising commission, I will now inquire into the intention of the legislature that adopted this revision of the statute. When this legislature declared the revision to be the Revised Statutes of New Mexico, they did not thereby declare that all laws not found in the revision should be repealed. If such was their intention, they would have said so in express terms, or by the use of words which are equivalent to an express repeal.

There is not to be found in the act adopting the revision any

provision whereby laws not contained in the revision should be repealed. The words in the section of the act above referred to, "be and the same are hereby declared to be the revised statutes and laws of the territory of New Mexico," contain the only language in that law which can in any way be construed as a repeal of all laws not embraced in the revision, and it is very clear to my mind that this language will not authorize the repeal of the law in question by any of the rules known for the construction of statutes.

From an examination of the laws adopting the revised statutes of several of the states of this union, I find in some of them language like this: "That all acts and parts of acts, the subjects whereof are revised or consolidated, and inconsistent with the laws contained in the revision, are declared to be repealed." In others, again, I find the subject left entirely open, as it is in the law under consideration, and to me it appears very wise, indeed, that the subject of the repeal of all laws not found in a revision of the statutes should be left open. For it is a well known fact in the history of legislation, and one that can not well be denied, that in the hurry of legislation, and in the great anxiety on the part of the revisers to have their work adopted before the adjournment of the legislature, many things are done which should be left undone, and that which should be done is frequently undone. And also for the further reason, that those who are charged with the work of revising may, as is frequently the case, omit through neglect or otherwise some of the laws intended to be put in the revision, which appears to be the case with the Revised Statutes of this territory. And it is safe to presume that the legislature took into consideration this fact, and in order to protect the rights of the people and the interests of the territory, refused to enact that all laws not contained in the revision should be repealed. I think that I am warranted in the opinion that this was the intention of the legislature that adopted the revision.

The law of January 26, 1860, then, if repealed at all, is done by implication, and the rule is well settled, and the result of a

long course of decisions, that repeals by implication are not favored by the courts. That there is no direct repeal is palpably evident, and it can only be impliedly repealed on account of inconsistency or repugnancy. It is not claimed that this law is inconsistent or repugnant to any of the laws in the revision, and it would hardly appear necessary to examine this point, were it not for the fact that I hold that if repealed at all, it must be on account of inconsistency and repugnancy.

If, however, there is in this law any inconsistency or repugnancy with any of the laws contained in the revision, it would then come under the rule of being impliedly repealed, on account of such inconsistency and repugnancy, and should be so declared. An examination of the statutes, however, so far as I have the time to examine, develops nothing that goes to establish the fact that this law is in any way inconsistent or repugnant with any of the laws in the revision. " When the provisions of two statutes are so far inconsistent with each other that both can not be·enforced, the latter must prevail; but if by any fair course of reasoning the two can be reconciled, both shall stand."

When the legislature intend to repeal a law, we may, as a general rule, expect them to do it in express terms, or by the use of words which are equivalent to an express repeal. No court will, if it can be consistently avoided, determine that a law is repealed by implication: *Heirs of Ludlow* v. *Johnson et al.*, 3 Ohio, 553 [S. C., 17 Am. Dec. 609]; *Miss. R. R. Co.* v. *Macon Co. Ct.*, 41 Mo. 453; *Buckingham et al.* v. *The Steubenville and Indiana R. R. Co.*, 10 Ohio St. 27; *Cass* v. *Dillon*, 2 Id. 611; Bac. Abr., tit. Statutes. It is no reason that the law should be declared repealed because it is supposed to be out of print. The supreme court is not responsible for this, and should not be called upon to declare a law repealed because it is out of print. That a reversal of the judgment of the court below will work an inconvenience on account of such law being out of print is a question I hold we have nothing to do with. That is for the law-making power of the territory to consider, and if they assume the power and responsibility of keeping laws

out of print, and thus depriving the people of what properly belongs to them, it is no ground for calling upon this court to declare such laws repealed.

On the whole, my conclusions are, that the law of January 26, 1860, is not repealed by the adoption of the Revised Statutes; and that there is no inconsistency or repugnancy in this law with any of the laws in the revision, which by the well-known rules of construction would authorize a repeal of the same by implication; and that the court below erred in refusing to have issue joined for the trial of the rights of the property claimed, and in dismissing the case. The judgment of the court below should therefore be reversed, and the cause remanded for trial.