BETTY J. RIESTERER, Appellant, *v.* SARA JANE DIET-
MEIER and THE ESTATE OF JOHN E. RIESTERER,
Respondents.

No. 13113

June 15, 1982                    646 P.2d 551

*Thorndal, Backus, Lyles & Maupin* and *James G. Arm-
strong,* Las Vegas, for Appellant.

*Reid & Alverson,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

John and Betty Riesterer were married in 1976. In 1979 John
purchased a home in Henderson in his name. Later in 1979

John and Betty separated, and in consideration of Betty's release of all claims against his property, John tendered to Betty approximately $50,000 in cash and real and personal property. Subsequently, in July 1979, John executed the will in controversy, leaving his entire estate, with the exception of two small bequests, to his daughter, Sara Jane, and making no mention of Betty. John and Betty were divorced two weeks later, but remarried in February 1980. John died in April 1980 in Missouri, survived by his wife and daughter. The only property of value in the estate is the home in Henderson.

Respondent, Sara Jane, filed a Petition for Letters of Ancillary Administration, seeking to admit the will to probate.

Appellant, Betty, petitioned for appointment of a special administrator on the grounds that the will was revoked pursuant to NRS 133.110. The trial court determined that the will was not revoked and denied appellant's petition.

We must determine whether a will, executed by a decedent after making a property settlement in a divorce action, is revoked upon subsequent remarriage to the former spouse, pursuant to NRS 133.110.

NRS 133.110 provides:

> If a person marries after making a will and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such a way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation shall be received.

Appellant contends that the will, executed after the property settlement, was revoked by the subsequent remarriage. Respondents argue that the statute is inapplicable to wills such as John's, made prior to a remarriage to the former spouse. Respondents also contend that if NRS 133.110 is applicable, the property settlement should be considered a "marriage contract" which, pursuant to the statute, would rebut the presumption of revocation. The trial court's decision was based on the latter position.

There is some support for respondents' contention that NRS 133.110 is inapplicable to wills made prior to remarriage to the former spouse. In Leggett v. Estate of Leggett, 88 Nev. 140, 494 P.2d 554 (1972), we were asked to determine the effect of NRS 133.110 on a will which left nothing to the testator's wife and made only passing reference to her. The testator had

divorced his wife, had agreed to a property settlement and had remarried the same person after executing the will.

*Leggett* concluded that the reference to the wife in the will, albeit nominal, was sufficient to demonstrate the testator's intention not to provide for her, thereby triggering rebuttal of the presumption of revocation upon remarriage.

This case does not impel a departure from *Leggett* as to the applicability of NRS 133.110 to cases involving remarriage to the former spouse. Although such remarriage is undoubtedly an event of some rarity, we are not convinced that the legislature intended to exclude from NRS 133.110, wills executed prior to remarriage to the former spouse. The statute's purpose is to prevent unintentional disinheritance of the surviving spouse. *Leggett, supra* at 143, 494 P.2d at 558. Certainly, it is conceivable that a surviving former spouse, who has remarried the testator, could suffer unintentional disinheritance. We note that other courts, faced with similar pretermitted spouse statutes, have applied the statutes to wills executed prior to remarriage to the former spouse. *See, e.g.,* Perkins v. Brown, 27 So.2d 521 (Fla. 1946); Estate of Montoya, 556 P.2d 353 (N.M. 1976). *See also,* 2 W. Bowe & D. Parker, Page on Wills, § 21.91 (rev. ed. 1960).

Even so, in this case, respondent has successfully rebutted the presumption of revocation. Appellant was the recipient of a property settlement upon her divorce from the testator. A property settlement is a "marriage contract" within contemplation of NRS 133.110, and its existence in this case rebuts the presumption of revocation. Appellant's contention that a marriage contract is one made exclusively in contemplation of marriage is without merit. In re Estate of Nelson, 537 P.2d 765 (Wash. 1975), presented the Washington Supreme Court with analoguous factual circumstances. The *Nelson* court construed a similar statutory exception to the presumption of revocation—"marriage settlement"—to include a post-nuptial property settlement. We are especially persuaded by that part of the *Nelson* decision which noted that the purpose of these statutes—prevention of unintentional disinheritance of the surviving spouse—would not be served "when *any* separate arrangement exists to indicate that the decedent wished to keep the will in force and provide specially for the spouse. . . . Whether the agreement is ante- or post-nuptial it shows that

separate provision was made for the spouse rendering the presumption of intent to revoke inapplicable.'' *Id.* at 772 (Emphasis in original.)

The decision of the trial court is affirmed.

GUNDERSON, C. J., MANOUKIAN, SPRINGER, and MOWBRAY, JJ., and ZENOFF, SR. J.,[1] concur.